BANK OF UTICA *against* MAGHER.

IN ERROR to the Court of Common Pleas of *Oneida*   According to
county.                                              the true con-
                                                     struction of the
                                                     act, (sess. 38.
                                                     ch. 144.) au-
thorizing the P. D. & Company of the bank of *Utica*, to establish an office of discount and deposit, at *Canandaigua*, in the county of *Ontario*, and requiring all notes issued at such *branch* at *C.* to be *countersigned* by the *cashier*, and declaring that the same should be considered as payable on demand, at such *branch* at *C.*, the holder of a note of the bank of *Utica* so *countersigned* and *issued*, cannot maintain an action upon it against the bank of *Utica*, without having previously demanded payment of it at the *branch* at *C.* A demand of payment at the bank in *Utica*, only, is not sufficient.

A note of the *Utica Bank*, on which is written, "countersigned O. Seymour," is *counter- signed* within the meaning of the act; for it is not necessary to give it validity, that he should add to his name, his official character of *cashier* at *C.*; and the act in question being in extension of the powers of the bank under their act of incorporation, which was a public act, is also a public act of which every person is bound to take notice.

The presumption, in such case, is, that the signing is *official*; and if there is any ambiguity on the face of the instrument, it may be explained by parol.

*M.* brought an action against the plaintiffs in error, in the Court below, on a bank note, dated *September* 1st, 1815, at *Utica*, by which the President, Directors and Company promised to pay to *Thomas Jefferson*, or bearer, on demand, five dollars. The declaration averred, that the plaintiff became lawfully possessed of the note, on the 20th of *January*, 1818, and, on that day, presented it to the defendants, at their banking hoase in *Utica*, and demanded payment thereof, which was refused. The defendants pleaded the general issue, with notice of special matter to be given in evidence. At the trial, the plaintiff proved the note, and that, on the 1st of *August*, 1817, it was presented to the defendants, at their bank in *Utica*, who refused payment, alleging, that it ought to be presented at the office of the Branch, at *Canandaigua.* The plaintiff, also, proved, that notes of the defendants' bank, countersigned " *O. Seymour*," were paid out and received at their banking house in *Utica*, in like manner as the notes of other country banks were paid out and received by the defendants ; but it did not appear, that notes countersigned by *O. Seymour* were ever originally issued at the banking house of the defendants in *Utica.* The defendants, then, gave in evidence the act passed the 10th of *April*, 1815, entitled, " an act authorizing the President, Directors and Company of the Bank of *Utica*, to establish an office of discount and deposit at the village of *Canandaigua*, in the county of *Ontario*, and for other purposes." By this act it was declared, that the notes of the said bank should be issued at the branch, excepting such as should be countersigned by the cashier ; and that the same should *then be considered as payable on demand at the office of the said branch.* The defendants proved, that *O. Seymour*, whose name was countersigned on the note, was *cashier* of the said Branch, in the village of *Canandaigua*, and that the signature was in his handwriting, the word " countersigned" being engraved on the note.

The defendants insisted, that on this evidence they were entitled to a verdict. But the Court decided, that the evidence of the defendants was not sufficient to bar the plaintiff, and that he was entitled to recover; and the

jury, accordingly, found a verdict for the plaintiff, for five dollars and 70 cents. The defendants' counsel tendered a bill of exceptions, on which the writ of error was brought to this Court.

UTICA,
October, 1820.

BANK OF
UTICA
v.
MAGHER.

*Foot*, for the plaintiffs in error. A corporation can act in no other way than that which is prescribed in its charter. (2 *Johns. Rep.* 109.) By the act, (sess. 38. ch. 144.) the notes of the plaintiffs so made and countersigned, though dated at *Utica*, are made payable, on demand, at *Canandaigua*. A *promissory* note, payable on demand at a particular place, must be presented for payment at that place. (14 *East*, 498. 2 *Taunt. Rep.* 60. 3 *Taunt. Rep.* 397. 16 *East Rep.* 108. 5 *Taunt. Rep.* 30.)

The damages recovered, in this case, being only five dollars and 70 cents, the plaintiff was not entitled to costs. The Court below awarded 35 dollars and 50 cents, for costs. As corporations are not expressly excepted in the act giving jurisdiction to Justices of the Peace, the plaintiff might have sued in a Justice's Court. (1 *N. R. L.* 387.) Costs are not given by the common law, and the statute relative to costs is to be construed strictly.

*Lee*, contra. The note was duly presented, and payment demanded, at the banking house of the defendants at *Utica*. The name of *O. Seymour* was, indeed, written on the note after the word " countersigned," but without any addition. He ought to have added the words " cashier of the office of discount and deposit at *Canandaigua*," otherwise the public cannot know, that the note is of that description which is payable only at the branch at *Canandaigua*. The appointment of the cashier is a private act, and the public are not informed, by the words " *O. Seymour*," that he is the cashier of the branch at *Canandaigua*, or that the note was issued there. For aught that appears, it was issued at the *Utica* bank.

Again; though a demand might be made at *Canandaigua*, yet the plaintiff had, also, a right to demand payment of the makers of the note at *Utica*. By the act incorporating the

UTICA,
October, 1820.

BANK OF
UTICA
v.
MAGHER.

bank, the defendants, in regard to notes issued by them, are placed on the same footing as an individual.

Again ; we say, that no demand of payment was necessary, before bringing the suit. For where a precedent debt or duty exists, no demand previous to bringing a suit is necessary ; though it may be otherwise, where the obligation to pay is collateral. (*Wolcott* v. *Van Santvoord*, 17 *Johns. Rep.* 248.  1 *Saund.* 33. n. 2.  2 *Saund.* 118. n. 3.  *Comyn's Dig. Pleader*, (C.) 69, 70.  4 *Johns. Rep.* 183.  10 *Mod.* 38.  *Bayley on Bills*, 110. 78. n. *a.*)

As to *costs*; this Court has decided, that a *corporation* cannot be sued in a Justice's Court. (5 *Johns. Rep.* 347. 7 *Johns. Rep.* 356.)  As the plaintiff is, therefore, compelled to sue in the Court of Common Pleas, he is entitled to costs in that Court.  The case is within the reason of the rule as to executors and administrators.  (2 *Johns. Cases*, 209.  3 *Johns. Rep.* 450.  6 *Johns. Rep.* 332.  7 *Johns. Rep.* 537.  8 *Johns. Rep.* 123.)

SPENCER, Ch. J. delivered the opinion of the Court.  The question arising on the record, is, whether the bank of *Utica* is liable to be sued, since the act of the 10th of *April*, 1815, on a note of that bank, countersigned by *O. Seymour*, the cashier of the office of discount and deposit in the village of *Canandaigua*, unless it be averred and proved that payment has been demanded at such office of discount and deposit, before the commencement of the suit ?

The act of the 10th of *April*, 1816, (sess. 38. ch. 144.) provides, that the bank of *Utica* may establish an office of discount and deposit at *Canandaigua*, under such rules and regulations as they shall prescribe, not contrary to the provisions of the act of incorporation ; and that no notes of the bank of *Utica* shall be issued at the branch bank, excepting such as shall be countersigned by the cashier; and the same shall then be considered as payable on demand, at the office of the said branch.

The object of the act was to transfer a part of the capital of the bank of *Utica*, to the office of discount and deposit at *Canandaigua*, for banking operations there.  The ability of the bank of *Utica* to redeem the notes issued by it, and es-

pecially as to such as were issued at the branch, was impaired, in proportion to the capital furnished to the branch. It appears to me to have been manifestly the intention of the legislature, that notes countersigned by the cashier of the branch bank, and issued from it, should be demandable, in the first instance, at the branch. *They are then to be considered as payable on demand at the office of the said branch.* That enactment, *ex vi termini,* excludes the idea, that with respect to bills thus countersigned and issued, they shall be payable, also, on demand, at the *Utica* bank. Considering the object and provisions of the act, we have no hesitation in saying, that payment of such bills must first be demanded at the branch. Any other construction would defeat the obvious intention of the legislature, and the declared purposes of the act. There can be no doubt that, if payment be refused, upon the presentment of a note countersigned and issued as prescribed by the branch, but that the *Utica* bank would be liable ; but until such demand be made, there is no default. We consider the act as imposing it, as a pre-requisite duty, on the holder of such a bill, to make a demand at the branch, before the *Utica* bank can be called upon.

It has been objected, that the note given in evidence was not countersigned, within the meaning of the act ; *Seymour* not having added to his signature the title of his office. The act prescribes no form of countersigning the notes issued by the branch. It requires only that the notes issued by the branch should be countersigned by the cashier ; and it is in proof that *O. Seymour* was the cashier. He has not added to his signature his official character ; and we do not think this necessary. The act of 1815 is a public statute ; for being an extension of the powers of the bank of *Utica,* and the original act being a public act, the enlarging act must necessarily be a public act. When, therefore, it is considered, that every person must be deemed conusant of the law of the land, and of the statute vesting the bank of *Utica* with the power of establishing a branch, and requiring the notes issued by it to be countersigned ; and when it is seen on the bill itself, that it is countersigned, there could exist no doubt on the mind of any one, that the bill in question had

UTICA,<br>October, 1820.<br><br>BANK OF<br>UTICA<br>v.<br>MAGHER.

UTICA,
October, 1820.

JACKSON
v.
CLAW.

been issued under the authority of the act of 1815. But in the present case, the plaintiff below was expressly informed, before he brought his suit, that this note ought to be presented at the branch. Independently of these considerations, it was not necessary to the validity of the act of countersigning, that *Seymour* should have added to his name his official character of *cashier.* This point was considered by the Supreme Court of the *United States,* in the case of the *Mechanics' Bank* v. *the Bank of Columbia,* (5 *Wheaton,* 334.) The check, in that case, wanted the official signature of the cashier, yet it was held, that it was an official, and not a private act, and that it was not true that the acts of agents derived their validity from professing, on the face of them, to have been done in the exercise of their agency. In that case, the court were of opinion, that the marks of an official character not only existed on the face of the check, but predominated, and that evidence to fix its true character became indispensable. In the present case, marks that *Seymour* countersigned this note, as cashier, greatly predominate. Who ever heard of a bank bill being thus countersigned by a private individual, and especially when the word " countersigned" is engraved on the bill? But when we consider this countersigning in connection with the act of 1815, there cannot remain a doubt, that it was an official act and a compliance with the statute.

　　　　　　　　　　　　　　　　　Judgment reversed.